UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Nos. 6:22-CR-56-CHB-HAI |
| | ) | |
| v. | ) | |
| | ) | RECOMMENDED DISPOSITION |
| FLOYD T. ADAMS, | ) | |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

On April 27, 2023, the Court conducted a competency hearing in this matter, per 18 U.S.C. §§ 4241 and 4247(d).[1] D.E. 52. The hearing followed a motion for a competency evaluation made by Defendant's attorney on October 4, 2022. D.E. 20. The Court granted the motion, ordered an evaluation in a custodial setting, and Defendant was remanded to the custody of the United States Marshal. D.E. 28. The Court, upon the required findings, ordered the psychiatric or psychological examination pursuant to 18 U.S.C. § 4241(b). D.E. 30.

The Court ordered the examination to be performed at the Metropolitan Correctional Center in Chicago, Illinois. D.E. 30. All parties had access to the Forensic Report ("the Report") prepared by Dr. Nicole Osborn, Psy.D. D.E. 50. In the Report, Dr. Osborn opined that Defendant is competent for trial purposes. *Id.* at 18. After receipt of the Report and Defendant's return to the District, the Court conducted a final hearing on competency on April 27, 2023. D.E. 52. During the final competency hearing, the parties stipulated to the admissibility of the Report, Dr. Osborn's qualifications, and the Report's findings. The parties also waived

---

[1] A finding that Defendant is unable to proceed to trial due to mental incompetency could be dispositive of his case. Thus, the Court proceeds via recommended disposition, pursuant to 28 U.S.C. § 636(b)(1)(B)-(C).

introduction of other proof of argument and waived the right to examine or cross-examine Dr. Osborn.

Section 4241 codifies the competency principles of *Dusky v. United States*, 362 U.S. 402 (1960). Thus, to be competent, a defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as a factual understanding of the proceedings against him." *Dusky*, 362 U.S. at 402; *see also* 18 U.S.C. § 4241(a) (phrasing the test as whether a defendant is "unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense"). Section 4247(d) of 18 U.S.C. governs the competency hearing and assures certain trial-type rights. These include the right to confront and cross-examine witnesses, and the right to participate in the hearing. *See* 18 U.S.C. § 4241(c) (referring to the hearing procedures outlined in section 4247(d)).

Ultimately, per section 4241(d) and based on the hearing, a defendant is not competent if, "after the hearing, the court finds by a preponderance of the evidence that the defendant" meets the incompetency definition of section 4241(a). This framework does not dictate which party bears the burden, which has led to disagreement among the Circuits. *See United States v. Carter*, No. 1:12-CR-29, 2013 WL 6668715, at *11 (E.D. Tenn. Dec. 18, 2013) (compiling cases).[2] Here, the proof is not in any way disputed, and the Court need not resolve the burden allocation question. *See Medina v. California*, 505 U.S. 427, 449 (1992) (indicating that argument over

---

[2] The Supreme Court, in dicta, has stated that "Congress has directed that the accused in a federal prosecution must prove incompetence by a preponderance of the evidence." *Cooper v. Oklahoma*, 517 U.S. 348, 362 (1996) (citing 18 U.S.C. § 4241). However, the Sixth Circuit previously stated that "[t]he government must demonstrate by a preponderance of the evidence that defendant is competent to stand trial." *United States v. Chapple*, 47 F.3d 1170 (6th Cir. 1995) (table).

2

burden, in competency context, only matters in a "narrow class" of cases where the proof is "in equipoise").

Defendant stipulated as to both the admissibility and the substance of the Report. Accordingly, the only proof concerning Defendant's competency is the expert analysis of Dr. Osborn. The Report reflects personal observation, a review of Defendant's available medical history and status, a sample of telephone calls Defendant made during the examination period, sufficient psychological testing, and a thorough assessment of Defendant's abilities in light of the applicable competency standards. The author analyzed Defendant's history, course of evaluation, and testing performance. Dr. Osborn directly observed Defendant via interviews and subjected him to psychological testing. D.E. 50. Dr. Osborn also contacted counsel for the government and defense. *Id.* at 3. The evaluator secured and reviewed some legal documents, including Defendant's criminal history, discovery provided by the government, and the Indictment. *Id*. at 3.

The Report is a thorough and comprehensive assessment of Defendant's mental and psychiatric condition. On the basis of available information, Dr. Osborn diagnosed Defendant with Other Specified Paraphilic Disorder, Pedophilic Sexual Interest (D.E. 50 at 16), which is not a "major mental health condition" (*id.* at 17) and does not impact his ability to understand the nature and consequences of legal proceedings or assist properly in his defense (*id.* at 18).

Defendant arrived at MCC Chicago with several prescription medications to treat diabetes, high blood pressure, and high cholesterol. D.E. 50 at 9. Defendant's medical summary he arrived with noted "memory changes." *Id.* During his evaluation, the attending provider prescribed Defendant medications for depression, migraines, diabetes, high blood pressure, and

high cholesterol. *Id.* These prescriptions were adjusted during the evaluation period as necessary. *Id.* at 9-10.

When asked to recall what he was charged with, Defendant indicated he did not know and did not remember "anything in between now and August 30th of last year." D.E. 50 at 7. Defendant reported having "no short-term memory." *Id.* Defendant also reported having seizures. *Id.* at 6. However, an EEG taken at an outside hospital during the evaluation period revealed that Defendant had not been experiencing seizure activity. *Id.* at 10. Rather, his "seizure-like activities were likely due to metabolic concerns." *Id.* Defendant also reported hearing voices and "seeing things that others do not." *Id.* at 7.

Dr. Osborn also administered multiple psychological tests including (1) Evaluation of Competence to Stand Trial-Revised (ECST-R); (2) Test of Memory Malingering (TOMM); (3) Miller Forensic Assessment of Symptoms Test (M-FAST); (4) Structured Interview of Reported Symptoms-Second Edition (SIRS-2); (5) Personality Assessment Inventory (PAI); (6) Wechsler Adult Intelligence Scale-Fourth Edition (WAIS-IV); and (7) Validity Indicator Profile (VIP). D.E. 50 at 2.

As to the PAI assessment, Defendant responded to similar test items inconsistently and endorsed "items that present an unfavorable impression." D.E. 50 at 10. Defendant's scores reflect that he did not answer the questions in a "completely forthright manner." *Id.* Thus, the Report indicates that the PAI results "likely overrepresent the extent and degree that Mr. Adams experiences clinical symptoms and concerns." *Id.* Specifically, the PAI results suggest that Defendant "overreported concerns about his physical health as well as symptoms of depression, anxiety, and psychosis." *Id.* at 11.

Defendant was administered the TOMM based on his reported memory deficits regarding the charges against him. D.E. 50 at 13. While the TOMM results indicate Defendant put forth some effort, the Report also notes that the second trial score was a point above the recommended guideline that indicates an individual is not putting forth their full effort. *Id.* The M-FAST was administered given Defendant's claims of psychotic symptoms and "concerns for potentially exaggerated clinical complaints on the PAI." D.E. 50 at 13. Defendant's results "are highly suggestive of possible feigning of mental illness," though the Report indicates that "a more comprehensive evaluation is required to assess this possibility." *Id.*

During the TOMM and M-FAST testing, Defendant appeared guarded when discussing the charges in the case and indicated he had no recollection of the allegations. D.E. 50 at 7. However, "[Defendant's] speech was organized, goal-oriented, and free from obvious signs of thought disorder." *Id.* Despite reporting that he was hearing a voice, Defendant "was not observed to be engaged in behaviors that would be consistent with someone who is experiencing auditory hallucinations." *Id.* at 7-8. Dr. Osborn opines that Defendant's statements observed from a sample of phone calls he made during the evaluation "suggest that he knows more about his legal case and has better memory than he reports." *Id.* at 9.

Based on Defendant's M-FAST score, the SIRS-2 was administered. D.E. 50 at 13. Defendant's scores ranged from "Genuine Responding" to "Probable Feigning." *Id.* at 14. Defendant "reported experiencing a higher-than-expected proportion of psychological problems and general symptoms," and his "Severity of Symptoms (SEV) scale was just below the threshold to be considered 'Probable Feigning.'" *Id.*

Administration of the WAIS-IV resulted in Defendant's overall IQ score of 74, which is in the "Borderline" range and is in the fourth percentile of peers his age. D.E. 50 at 11. The

Report includes discussion of Defendant's index scores, which range from the third percentile to the thirty-fourth percentile. *Id.* at 11-12. The Report also indicates that Defendant gave poor effort during the WAIS-IV. *Id.* at 8. When asked to try to answer the questions or "take a guess," Defendant said he did not remember or know the answers. *Id.* Thus, the Report concludes that Defendant's WAIS-IV results are "questionable" and amount to an "underestimate of his intellectual functioning." *Id.* at 12.

Based on Defendant's poor WAIS-IV scores, the VIP was administered to evaluate the validity of his response style. D.E. 50 at 12. Defendant's verbal domain results indicated that, "while he put in some effort, he may not have given full effort." *Id.* Defendant's non-verbal domain results also indicated a lack of effort or interest in completing the test. *Id.* Considering these results and those from the WAIS-IV, the Report concludes that the "most likely explanations for [Defendant's] performance are a lack of interest in the test or a desire to appear impaired." *Id.* at 13.

Overall, the Report includes a thorough assessment of these tests and Defendant's scores.

The evaluator also found that Defendant had an adequate understanding of the court proceedings. D.E. 50 at 14-18. The Report reflects that Defendant identified and provided basic descriptions of the roles and functions courtroom participants, plea options, and appropriate courtroom behavior. *Id.* at 14-15. However, Defendant "did not demonstrate the rational ability to comprehend the proceedings or his conditions in reference to the criminal proceedings during formal interview." *Id.* at 15. When asked about the charges against him, Defendant repeatedly stated that he did not remember anything except that he was arrested on "August 30" of "last year" while he was at home. *Id.*

Similarly, Defendant "did not present during the formal interview with the ability to assist counsel properly in his defense." *Id.* at 16. The Report indicates that Defendant correctly identified his attorney by name during his first interview. *Id.* However, weeks later, Defendant denied remembering his attorney's name. *Id.* Defendant said he did not remember ever meeting with his attorney or know of evidence that could be used in his case. *Id.*

The Report notes inconsistencies between Defendant's presentation with staff compared to his phone calls and test results. D.E. 50 at 17. Defendant was able to "generally recall his personal history as well as knowledge about the court system and the roles of the courtroom participants." *Id.* Defendant also "consistently presented as able to remember staff members and where their offices are located over the course of weeks." *Id.* Defendant remembered to attend appointments and was able to follow directions from staff. *Id.* The Report also indicates that the evaluator's review of discovery materials revealed that Defendant had previously "provided a detailed explanation of events that led to his charges on multiple occasions." *Id.* Defendant also had near-daily phone calls with his wife and was able to recall details from those calls "over the span of hours and days." *Id.* at 18. Thus, the Report concludes that "[g]iven the lack of a plausible explanation for a significant cognitive functioning decline, it is unlikely that the defendant would have no memory of the circumstances he discussed prior to his arrest." *Id.* at 17-18. The Report concludes:

> Mr. Adams does not suffer from a mental disease or defect that would impact his ability to understand the nature and consequences of the legal proceedings or assist properly in his defense. While he reports memory deficits and psychological symptoms, these reports appear to be attempts to present himself as more impaired than he currently is. He appears to possess sufficient competency related ability to continue with his criminal proceedings. While Mr. Adams may continue to report memory deficits, these reports should be viewed as an unwillingness rather than a lack of capacity to effectively participate in legal proceedings and

    assist his defense. Consequently, it is the opinion of [the] undersigned that Mr. Adams is competent to proceed at this time.

*Id.* at 18.

    Dr. Osborn accurately applied the *Dusky* standard as codified in 18 U.S.C. § 4241(a) to determine that Defendant is competent. D.E. 50 at 18. Dr. Osborn elicited from Defendant definitions of key terms and participants in a trial, as well as the elements and procedures related to a criminal trial. *Id*. at 14-15. While Defendant reported memory deficits related to the charges against him and the relationship with this attorney, the Report thoroughly highlights the inconsistencies with these assertions. *Id.* at 16-18. The Report concludes that these alleged deficits should be viewed as an unwillingness to participate, rather than a lack of capacity to do so. *Id.* 18. As such, the Report supports a finding that both prongs of the *Dusky* competency test appear to be met in this case, and its conclusions are unrebutted.

    Additionally, the Court sought the insight of counsel for Defendant, Hon. David Hoskins. Mr. Hoskins indicated that Defendant seemed to understand the contents of the Report and their interactions were consistent with the evaluator's assessment and conclusions.

    For the foregoing reasons, the Court finds no evidence which tends to show that Defendant is not competent. That finding, of course, precludes any finding of incompetency by a preponderance of the evidence. Per 18 U.S.C. § 4241(a), Defendant is able to understand the nature and consequences of the proceedings against him and to assist properly in his own defense. Therefore, the undersigned **RECOMMENDS** that the District Judge find that Defendant is competent to face further proceedings, to include trial, in this matter.

    The Court issues this Recommended Disposition pursuant to 28 U.S.C. § 636(b)(1)(B). The parties should consult that statute and Federal Rule of Criminal Procedure 59(b) concerning

the right to appeal to the District Judge. Any objection must be filed within **FOURTEEN DAYS** of the entry of this recommendation. Failure to object per Rule 59(b) waives a party's right to review. Upon expiration of that five-day period, this matter will be submitted to Judge Boom for her consideration and to address the procedural posture.

This the 28th day of April, 2023.

Signed By:
Hanly A. Ingram
United States Magistrate Judge